IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

**DANNIE WILEY, #B82633,**

    **Plaintiff,**

v.

**SETH MERACLE,** *et al.,*

    **Defendants.**

Case No. 3:20-cv-01140-SPM

# MEMORANDUM AND ORDER

**MCGLYNN, District Judge:**

  This case is before the Court on Plaintiff Dannie Wiley's request to amend his Complaint (Docs. 27, 29). Defendant Meracle moved to strike the proposed First Amended Complaint (Doc. 30) and Plaintiff has responded to the motion (Doc. 33).

  Plaintiff timely submitted his proposed First Amended Complaint (Doc. 29), but he neglected to file a motion for leave to amend according to the Court's instructions. (Docs. 18, 26, 28). Upon receipt of the proposed First Amended Complaint, the Clerk made a docket entry (Doc. 27) representing Plaintiff's implied motion for leave to amend. The Court ordered the Clerk to docket the proposed pleading so that Defendant could review it and respond. (Doc. 29).

  Defendant's Motion argues that the proposed First Amended Complaint should be stricken because Plaintiff failed to file a motion seeking leave to amend; the proposed pleading attempts to include individuals previously dismissed from the action in the initial merit review order (Doc. 10);[1] relies on conclusory or insufficient allegations to revive those claims; and attempts to bring a new due process claim that is barred by the statute of limitations. (Doc. 30, pp. 2-3). Plaintiff's

---

[1] The merit review order on Plaintiff's original Complaint (Doc. 1), filed October 29, 2020, dismissed Lt. Frank, John Doe Doctor, Jane Doe Nurse Practitioner, Ms. Molly, Ms. Mason, Medical Prison Staff, and Ms. Hill from the action without prejudice. (Doc. 10, pp. 2-6).

1

Response to the Motion to Strike asks the Court's forgiveness for his failure to file a motion for leave, because he was suffering from the aftereffects of COVID-19 and mental distress, and forgot to file the motion. (Doc. 33, p. 2). Plaintiff points out that the Defendants he seeks to reinstate were dismissed by the Court without prejudice and avers that his proposed pleading includes sufficient facts to support his claims against them. (Doc. 33, pp. 3-4). He asks permission to file a Second Amended Complaint to cure the defects raised in Defendant's motion. (Doc. 33, p. 4).

The Motion to Strike (Doc. 30) will be denied. While Plaintiff did not follow instructions to file a motion seeking leave to amend, the Court is cognizant of his *pro se* status as well as the physical and mental challenges Plaintiff faced at the time his proposed pleading was due and will overlook his omission this time. Plaintiff is reminded to comply with all instructions in the future as set forth in the Court's scheduling and other orders. Plaintiff did follow the rule requiring him to underline new material in the proposed amended pleading, and it is well organized and adequately sets forth Plaintiff's claims. Further, Plaintiff is correct that the dismissal of the several Defendants was without prejudice, thus his claims against them may be revived if the amended pleading survives review under 28 U.S.C. § 1915A. The previous dismissal of these individuals does not constitute grounds to strike the proposed amendment.

Defendant's objections to the substance of the Proposed First Amended Complaint are best addressed in the context of the Court's required § 1915A review of the proposed pleading. Under 28 U.S.C. § 1915A, the Court must screen all prisoner Complaints to filter out nonmeritorious claims and must dismiss any portion of the Complaint that is legally frivolous, malicious, fails to state a claim for relief, or requests money damages from an immune defendant. 28 U.S.C. § 1915A(a), (b). The factual allegations of the *pro se* Complaint are liberally construed. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

## BACKGROUND

After the Court reviewed the original Complaint (Doc. 1), the following claims survived:

**Count 1:** Eighth Amendment claim against Meracle for the use of excessive force against Plaintiff Wiley.

**Count 2:** Eighth Amendment claim against Meracle for stripping Wiley of his clothes and leaving him in the cell naked.

**Count 3:** Eighth Amendment claim against Meracle for deliberate indifference to Wiley's serious medical needs.

(Doc. 10).

## THE FIRST AMENDED COMPLAINT (DOC. 29)

The First Amended Complaint sets forth essentially the same factual allegations against Defendant Meracle in support of Counts 1, 2, and 3 above, which the Court deemed sufficient to allow those claims to proceed. (Doc. 10, pp. 2-5; Doc. 29, pp. 8-10, 17-18, 23, 26). Accordingly, the summary below will focus on Plaintiff's allegations against the other Defendants.

The incidents described in the First Amended Complaint began on October 29, 2018 at Pinckneyville Correctional Center ("Pinckneyville"), with a confrontation between Plaintiff and Lt. Smith. (Doc. 29, pp. 7-8). Lt. Smith handcuffed Plaintiff and while escorting him to segregation, squeezed the cuffs tightly onto Plaintiff's wrists and painfully bent his hand upwards. Smith passed Plaintiff off to Lt. Meracle, who applied more pressure to the handcuffs, injuring Plaintiff's wrists. Meracle slammed Plaintiff's head onto the cell bunk, placed his knee on Plaintiff's neck, and had Unknown Officers #1 and #2 strip Plaintiff of his clothes. (Doc. 29, pp. 8-10, 26). Meracle ignored Plaintiff's request for medical attention for his bleeding wrists and lump on his forehead, and left him in the cold cell naked and without bedding for over three hours. (Doc 29, p. 10).

On October 30, 2018, Ms. Molly (mental health worker) offered and arranged for Plaintiff

to see someone from mental health. Plaintiff informed her he had been assaulted by officers, showed her his wrist lacerations and forehead injury, and asked her to help him get medical attention. She advised him to send a kite to health care, which Plaintiff did that day. He also filed an emergency grievance over the matter by placing both papers in the "door-wedge" of his cell. (Doc. 29, pp. 10-11).

The next day, Plaintiff was served with a disciplinary ticket over the encounter with Lt. Smith, charging him with Dangerous Disturbance, Security Threat Group, and other offenses. (Doc. 29, pp. 11-12; 39-40). Plaintiff listed his cellmate as a witness, asked for all the individuals present to be interviewed and called as witnesses, and requested an investigation. He gave the witness request form to C/O Wanika a/k/a Goldberg[2] to give to the Adjustment Committee. *Id.*

On November 5, 2018, an unknown mental health staff member[3] visited Plaintiff and instructed him to submit a sick call request to obtain medical care in response to his complaint that he still had not received medical attention. Plaintiff wrote another kite to medical. (Doc. 29, pp. 12-13).

Plaintiff's mother informed Counselor Lose[4] by phone on or about November 5, 2018 that Plaintiff was assaulted and needed medical attention; Lose said she would leave the matter to Counselor Samolinski. (Doc. 29, pp. 13, 43).

On November 6, 2018, Plaintiff's disciplinary hearing was held before Officers Charles Heck and Marcus Myers. They denied having received Plaintiff's witness request or written statement. Plaintiff gave them another copy; they said they would look into it. (Doc. 29, pp. 13-14). Plaintiff was later found guilty of three charged offenses, but the Security Threat Group-Unauthorized Organization charge was deleted. The summary falsely stated that Plaintiff did not

---

[2] Plaintiff does not assert any claim against C/O Wanika a/k/a Goldberg. (Doc. 29, pp. 23-25).
[3] Plaintiff does not assert any claim against this unknown mental health worker. (Doc. 29, pp. 23-25).
[4] Plaintiff does not assert any claim against Counselor Lose. (Doc. 29, pp. 23-25).

request a witness. (Doc. 29, p. 16). Plaintiff was punished with six months in segregation, transferred to a disciplinary prison, and six months of his good conduct credit was revoked. (Doc. 29, pp. 25-26, 42, 45). Plaintiff filed a grievance over being denied due process in the disciplinary hearing. (Doc. 29, pp. 20, 38, 41).

On November 14, 2018, Lt. Smith spoke to Plaintiff in his cell. Plaintiff showed Smith his injured wrists and forehead and said his sick call requests had been ignored; Smith said there was nothing he could do and walked away. (Doc. 29, pp. 14-25).

On or about November 15, 2018, Plaintiff's mother spoke by phone to Lt. Frank of Internal Affairs ("I.A.") regarding Plaintiff's need for medical attention for the injuries inflicted by Meracle and Smith. She also spoke on November 20, 2018 with an assistant warden who said he would check on the matter. (Doc. 29, pp. 15-16). Meanwhile, Plaintiff filed another grievance over the incident. (Doc. 29, pp. 16, 28-29).

Ms. Mason of mental health saw Plaintiff on November 22, 2018; he showed her his injuries and asked for help getting medical attention; she told him she would contact I.A. (Doc. 29, p. 17).

On November 26, 2018, Plaintiff was taken to the I.A. office and spoke to Lt. Frank. Plaintiff recounted the injuries inflicted by Meracle. Frank accused Plaintiff of lying but ordered the transport officer to take Plaintiff to the Health Care Unit. (Doc. 29, pp. 17-18). The unknown nurses who attended him accused Plaintiff of lying about submitting sick call requests since they had not received any. They refused to give him pain medication for his severe back/neck and head pain and numbness in his wrists. (Doc. 29, pp. 18-19).

Also on November 26, 2018, Plaintiff's mother called Samolinski requesting his help for Plaintiff to get medical care; Samolinski said he would talk to a Lieutenant. (Doc. 29, p. 19).

On November 27, 2018, Plaintiff met with an unknown Doctor and unknown Nurse

5

Practitioner for a blood pressure check. He asked them for pain medication for his forehead and wrist injuries, but they refused because Plaintiff was not seeing them for those reasons. (Doc. 29, pp. 19-20). The doctor instructed Plaintiff to submit a sick call request.

Plaintiff's mother called Samolinski again on December 4, 2018, about the lack of medical treatment and Samolinski promised to send an email to the health care unit. (Doc. 29, pp. 20, 43-44). Plaintiff filed another grievance on December 7, 2018. (Doc. 29, pp. 20, 31, 44).

On or about December 12, 2018, Plaintiff was transferred to Hill Correctional Center without ever obtaining medical treatment at Pinckneyville for his injuries. (Doc. 29, pp. 20-21, 31, 44).

### PRELIMINARY DISMISSALS

As in the original Complaint, Plaintiff seeks to assert claims against some individuals who are not included with his list of Defendants nor named in the case caption. He claims J. Keller, Charles Heck, and Marcus Myers deprived him of due process, states Unknown Officers #1 and #2 stripped his clothes off and failed to protect him from Meracle, and asserts that two or three unknown nurses failed to give him pain medication on November 26, 2018. (Doc. 29, pp. 1-2, 18-19, 23-26). As was explained in the original merit review Order (Doc. 10, pp. 2-3), the Court will not treat such individuals as Defendants. *See* FED. R. CIV. P. 10(a) (noting that the title of the complaint "must name all the parties"); *Myles v. United States*, 416 F.3d 551, 551-52 (7th Cir. 2005) (to be properly considered a party a defendant must be "specif[ied] in the caption"); (*See* Doc. 10, pp. 2-3). Accordingly, all claims against Keller, Heck, Myers, Unknown Officers #1 and #2, and the unknown nurses are dismissed without prejudice.

### MERITS REVIEW UNDER 28 U.S.C. § 1915A

Based on the allegations in the First Amended Complaint, the Court revises the designations of Plaintiff's claims as follows:

| | | |
|---|---|---|
| **Count 1:** | | Eighth Amendment claim against Meracle and Smith for the use of excessive force against Plaintiff on October 29, 2018. |
| **Count 2:** | | Eighth Amendment claim against Meracle for stripping Plaintiff of his clothes and leaving him in the cell naked. |
| **Count 3:** | | Eighth Amendment claim against Meracle, Smith, Molly, Mason, Frank, Samolinski, the Unknown Assistant Warden, the Unknown Nurse Practitioner, and the Unknown Doctor, for deliberate indifference to Plaintiff's serious medical needs. |
| **Count 4:** | | Due process claim against Smith for fabricating the disciplinary report that resulted in Plaintiff being punished without the Adjustment Committee investigating the matter or calling his witnesses. |

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the First Amended Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly* pleading standard**.[5]

### Count 1

The Court previously found that Plaintiff sufficiently alleged a cognizable excessive force claim against Meracle, and the First Amended Complaint likewise does so.

The original Complaint included allegations of excessive force against Lt. Smith, but he was dismissed without prejudice because Plaintiff failed to list him as a Defendant or include him in the caption of his pleading. (Doc. 1, pp. 1-2, 6; Doc. 10, pp. 2-3). Plaintiff has now corrected that error, and the factual allegations in the First Amended Complaint support the excessive force claim as to Smith. *See DeWalt v. Carter*, 224 F.3d 607, 619 (7th Cir. 2000). Accordingly, Count 1 will proceed against both Meracle and Smith.

---

[5] *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim that is plausible on its face.").

**Count 2**

This Eighth Amendment claim against Meracle for leaving Plaintiff naked in a cold cell for at least three hours is unchanged from the Court's previous review and shall proceed under the First Amended Complaint.

**Count 3**

Prison officials and medical staff violate the Eighth Amendment's prohibition against cruel and unusual punishment when they act with deliberate indifference to a prisoner's serious medical needs. *Rasho v. Elyea*, 856 F.3d 469, 475 (7th Cir. 2017). To state such a claim, a prisoner must plead facts and allegations suggesting that (1) he suffered from an objectively serious medical condition, and (2) the defendant was aware of the serious condition and either knowingly or recklessly disregarded it. *Hayes v. Snyder*, 546 F.3d 516, 524 (7th Cir. 2008).

Based on Plaintiff's original Complaint, the Court allowed the claim in Count 3 to proceed against Meracle, who refused to obtain medical care for Plaintiff after his allegedly excessive force inflicted injury on Plaintiff. (Doc. 10, pp. 4-5). The First Amended Complaint outlines substantially identical facts regarding Smith's conduct – he used excessive force on Plaintiff and knew about Plaintiff's injuries yet refused to get medical care for him. Count 3 will also proceed against Smith.

Mental health staff Ms. Molly and Ms. Mason were dismissed because the original Complaint included only conclusory allegations that they were deliberately indifferent to Plaintiff's condition. (Doc. 1, p. 7; Doc. 10, p. 5). The First Amended Complaint sets forth the missing factual content regarding these Defendants, however, the Court finds their alleged conduct does not rise to the level of deliberate indifference. Molly and Mason arranged for Plaintiff to receive mental health services, but neither was a medical practitioner. Upon learning of his need for medical care the day after Plaintiff sustained the injuries, Molly advised him to follow the

normal procedure to submit a sick call request, which Plaintiff did. Molly's response does not display deliberate indifference. Ms. Mason interacted with Plaintiff some three weeks after he was injured (November 22, 2018). (Doc. 29, p. 17). Upon learning he still had not received medical care, she told Plaintiff she would contact I.A. and it appears that she did so, because Plaintiff was called to see Lt. Frank of I.A. four days later on November 26, 2018. Ms. Mason made an appropriate response to Plaintiff's situation that does not indicate deliberate indifference. Count 3 will therefore be dismissed as to Molly and Mason.

Plaintiff's allegations set forth a deliberate indifference claim against Lt. Frank (I.A. Officer) that survives 1915A review at this early stage. Frank was informed by Plaintiff's mother on November 15, 2018 of Plaintiff's need for medical care. Eleven days later, on November 26, 2018, Frank called Plaintiff to his office and observed Plaintiff's injuries. (Doc. 29, pp. 15, 17-18). While Frank directed an officer to take Plaintiff to the Health Care Unit at that time, Frank's 11-day delay in following up to the complaint that Plaintiff's injuries had gone untreated for over two weeks may have unnecessarily subjected Plaintiff to additional pain and suffering. Count 3 will also proceed against Frank.

Plaintiff claims that his mother contacted the Unknown Assistant Warden by phone on November 20, 2018, and this individual said he would look into the matter of Plaintiff's need for medical care. (Doc. 29, p. 16). Plaintiff includes no other allegations against the Assistant Warden. These facts are too threadbare to support a claim for deliberate indifference. Plaintiff does not claim to have personally interacted with the Assistant Warden. He expects the Court to infer that the Assistant Warden did not take timely action, but the fact that Plaintiff was called in to see Lt. Frank on November 26, 2018, supports a reasonable inference that the Assistant Warden may have instructed Frank to look into the issue. The First Amended Complaint fails to state a claim upon which relief may be granted against the Unknown Assistant Warden, and Count 3 will be dismissed

against him.

Samolinski was earlier dismissed from the action without prejudice because Plaintiff failed to list him as a Defendant or include him in the caption of his pleading. (Doc. 1, pp. 1-2, 6; Doc. 10, pp. 2-3). In the First Amended Complaint, Plaintiff claims that Samolinski was informed as of his mother's November 5, 2018 inquiry to Counselor Lose, as well as through Plaintiff's grievances, that he was being denied medical treatment – yet Samolinski waited for more than 30 days to contact the Health Care Unit about Plaintiff's medical needs. (Doc. 29, pp. 13, 24, 28-29, 31, 43).

Plaintiff's Cumulative Counseling Summary reflects a November 5, 2018, note by a Counselor Alvis on Plaintiff's mother's phone call about his head injury, however, there is no indication that Samolinski knew of that information at the time. (Doc. 29, p. 43). Plaintiff's November 12, 2018 grievance was handled by Samolinski, but notably, Plaintiff did not request medical care in that grievance. (Doc. 29, pp. 28-29). Samolinski recorded face to face visits with Plaintiff on November 20 and November 26, 2018, noting Plaintiff asked for request slips and grievances, but he does not state that Plaintiff raised any concerns about lack of medical treatment on those dates. (Doc. 29, p. 43). Plaintiff asserts his mother called Samolinski again on November 26, 2018 requesting medical care and he responded he would talk to a Lieutenant. (Doc. 29, p. 19). The Cumulative Counseling Summary has no record of that call, but Samolinski recorded another call from Plaintiff's mother on December 4, 2018, and he emailed the Health Care Unit about Plaintiff's concerns on that day. (Doc. 29, p. 43). Plaintiff's December 7, 2018, grievance is the only attached document reviewed by Samolinski that contained a request for medical treatment (Doc. 29, p. 31). By the time Samolinski responded to that grievance, Plaintiff had been transferred. *Id.*

This record indicates some delay by Samolinski in acting on Plaintiff's mother's November

26, 2018 request, as he made no inquiry to Health Care for eight days until she called again on December 4. However, Plaintiff had already visited the Health Care Unit on November 26, 2018 when Lt. Frank had him sent there, thus Samolinski's failure to contact that department until December 4, 2018 cannot be said to have caused Plaintiff further delay in obtaining a medical visit. These facts are insufficient to sustain a deliberate indifference claim against Samolinski, and he will be dismissed from Count 3.

Finally, Plaintiff asserts that when he saw the Unknown Nurse Practitioner and Unknown Doctor on November 27, 2018, he called their attention to his head and wrist injuries and requested pain pills. However, they refused to treat him for the pain because he was only scheduled for a blood pressure check. These factual allegations are sufficient to state deliberate indifference claims against these medical providers, and Count 3 will proceed against them. However, Plaintiff must identify these Unknown Defendants by name before they can be served with notice of this action.

To summarize, Count 3 will proceed only against Meracle, Smith, Frank, the Unknown Nurse Practitioner, and the Unknown Doctor. Defendants Molly, Mason, Unknown Assistant Warden, and Samolinski are dismissed from Count 3 and from the action without prejudice.

**Count 4**

This due process claim will be dismissed without prejudice for failure to state a claim upon which relief may be granted. The only properly named Defendant, Lt. Smith, allegedly fabricated the disciplinary report against Plaintiff. But even if Plaintiff had correctly identified hearing officers Keller, Heck, and Myers as Defendants, the due process claim would not survive 1915A review. Plaintiff's punishment included the revocation of six months of good conduct credit, which has the effect of lengthening the time he must spend in custody. (Doc. 29, p. 26).

In *Edwards v. Balisok*, 520 U.S. 641, 646-68 (1997), the Supreme Court held that claims that "necessarily imply the invalidity of the deprivation of [the prisoner's] good-time credits" are

11

not actionable under § 1983 unless the prison disciplinary decision has been invalidated, even though the restoration of credits is not sought as a remedy. *See also Heck v. Humphrey*, 512 U.S. 477 (1994) (action for damages that "would necessarily imply the invalidity of [a plaintiff's] conviction or sentence" is not cognizable until the conviction or sentence has been reversed, expunged, invalidated, or called into question by a federal court's issuance of a writ of habeas corpus). For purposes of the *Heck* analysis, "the ruling in a prison disciplinary proceeding is a conviction." *Moore v. Mahone*, 652 F.3d 722, 723 (7th Cir. 2011) (citing *Balisok*; *Gilbert v. Cook*, 512 F.3d 899, 900 (7th Cir. 2008)).

In the instant action, Plaintiff seeks monetary damages stemming from the punishment that resulted from the allegedly false conduct charge and improperly conducted disciplinary hearing. An award in his favor would necessarily imply that the disciplinary action was invalid. Plaintiff provides no documentation showing that the disciplinary matter was expunged, reversed, or invalidated, nor does he claim that it was. So long as the disciplinary action remains intact, under the doctrine of *Heck* and *Balisok*, Plaintiff cannot maintain a civil rights action for damages connected to any aspect of that punishment. His civil rights claim would only ripen if and when the disciplinary decision is reversed or otherwise invalidated. *See Simpson v. Nickel*, 450 F.3d 303, 306-07 (7th Cir. 2006).

Count 4 will be dismissed without prejudice to Plaintiff raising his claim, should he wish to do so, if and when the action imposing an extended duration of his confinement is overturned. Plaintiff may be able to pursue relief in a federal habeas corpus case, after presenting his claim to the Illinois state courts. This includes appealing any adverse decision to the Illinois Appellate Court and the Illinois Supreme Court. The Illinois courts, for example, have recognized mandamus as an appropriate remedy to compel prison officials to award sentence credit to a prisoner. *See* 735 ILL. COMP. STAT. 5/14-101 *et seq.*; *Turner-El v. West*, 811 N.E.2d 728, 733 (Ill. App. 2004) (citing

*Taylor v. Franzen*, 417 N.E.2d 242, 247, *aff'd on reh'g*, 420 N.E.2d 1203 (Ill. App. 1981)).

Defendant Meracle argues that Plaintiff's purported due process claim is barred by the statute of limitations because it occurred in 2018 and he did not include the claim in the action until July 5, 2022. (Doc. 30, p. 3). However, a *Heck*-barred claim does not accrue until the underlying disciplinary matter/conviction is expunged or invalidated. *See Heck*, 512 U.S. at 486-87. The timeliness of this claim, if Plaintiff should bring it in a future action, is a matter that need not be further discussed at this juncture.

### Unknown (John/Jane Doe) Defendants

Plaintiff is responsible for conducting discovery (informal or formal) aimed at identifying the Unknown Nurse Practitioner and the Unknown Doctor. Once the names of the unknown Defendants are discovered, Plaintiff must file a motion to substitute the newly identified Defendants in place of the generic designations in the case caption and throughout the First Amended Complaint. The Court will enter an additional discovery order after Defendants Smith and Frank respond to the First Amended Complaint, but Plaintiff may commence discovery as to the identities of the Unknown Nurse Practitioner and the Unknown Doctor at any time.

### DISPOSITION

Plaintiff's implied Motion for Leave to file Amended Complaint (Doc. 27) is **GRANTED**. Defendant Meracle's Motion to Strike Plaintiff's Amended Complaint (Doc. 30) is **DENIED**. Plaintiff's request to submit a Second Amended Complaint (Doc. 33, p. 4) is **DENIED** as the Proposed First Amended Complaint survives § 1915A review as outlined above.

The Clerk is **DIRECTED** to file Plaintiff's Proposed First Amended Complaint (Doc. 29) on the docket as his First Amended Complaint. The Clerk is **FURTHER DIRECTED** to add the following Defendants to the docket sheet: Lt. Smith (#10491), Lt. Frank (Internal Affairs), Unknown Nurse Practitioner, and Unknown Doctor.

The First Amended Complaint states colorable claims in Count 1 against Meracle and Smith; in Count 2 against Meracle; and in Count 3 against Meracle, Smith, Frank, the Unknown Nurse Practitioner, and the Unknown Doctor. Count 4 is **DISMISSED** without prejudice. Defendants Molly, Mason, Unknown Assistant Warden, and Samolinski are **DISMISSED** without prejudice.

The Clerk shall prepare for Defendants Smith and Frank: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the First Amended Complaint, the Memorandum and Order at Doc. 10, the Initial Scheduling and Discovery Order at Doc. 18, and this Memorandum and Order to these Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on the Defendant, and the Court will require the Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a Defendant cannot be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk and shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the First Amended Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **Pursuant to Administrative Order No. 244, Defendants need only respond to the issues stated in this Merit Review Order**. Defendants shall note the deadlines set forth in the Initial Scheduling and Discovery Order (Doc. 18, pp. 3-4) applying to Late Appearing Parties.

Plaintiff is **REMINDED** that he is under a continuing obligation to keep the Clerk of Court and the opposing parties informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED:** December 30, 2022

*Stephen P. McGlynn*
**STEPHEN P. MCGLYNN**
**United States District Judge**